IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
FEB - 1 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, 131 M. Street, NE Suite 400 Washington DC, 20507 Plaintiff, v. TITUS, LLC 7603 Georgia Ave, NW Washington, DC 20012 Defendant. | Case: 1:11-cv-00283 Assigned To : Kollar-Kotelly, Colleen Assign. Date : 2/1/2011 Description: Employ. Discrim. COMPLAINT JURY TRIAL DEMAND |

**JURY ACTION**

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on sex, female, and retaliation, and to provide appropriate relief to Margaret Pye, who was adversely affected by such practices. Plaintiff, the United States Equal Employment Opportunity Commission (the "EEOC" or the "Commission"), alleges that Defendant, Titus, LLC ("Defendant"), discriminated against Margaret Pye by subjecting her to a hostile work environment based on her sex, female, and retaliating against her for complaining about the sexual harassment by subjecting her to disparate terms and conditions of employment and discharging her.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Columbia.

RECEIVED
FEB - 1 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a limited liability company doing business in the District of Columbia and the City of Washington, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Margaret Pye filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. From around August 19, 2009 until around September 4, 2009, Defendant engaged in unlawful employment practices at its Fort Belvoir, Virginia jobsite (hereafter "the facility"), in violation of Section 703(a)(1) and 704(a) of Title VII, 42 U.S.C. §2000e-2(a)(1) and 42 U.S.C. §2000e-3, by subjecting Margaret Pye to a sexually hostile work environment based on her sex and retaliating against her for complaining about the harassment by subjecting her to disparate terms and conditions of employment and terminating her employment.

8. Around July 10, 2009, Margaret Pye was hired by the Defendant as a journeyman electrician and was assigned to work at the facility. On or about August 19, 2009, Pye

discovered a picture of a 1.5 to 2 foot long penis with testicles drawn on the electrical panel in the area where she was assigned to work. The drawing had hair on the testicles and depicted droplets of liquid – representing semen – shooting from the tip of the penis. Underneath the drawing was the name of a Foreman who was working on the jobsite with the phrase "[Foreman] sucks it." Pye was shocked and offended by this graffiti and the graffiti made her uncomfortable.

9. A short time later on that same day, on or about August 19, 2009, Pye complained about the drawing of the penis to her immediate supervisor (the "supervisor"). When her supervisor made light of the picture, Pye requested that the foreman on the project be informed of her complaint. The supervisor told Pye that if she was offended by the graffiti she should clean it up herself, and that it would be her "special project." Pye refused to remove the sexually offensive graffiti. Consequently, the graffiti remained up and Pye saw it each day that she worked as she had to walk past it in order to get to her assigned work station. Defendant did not remove the offensive picture during Pye's employment.

10. Beginning a few days after Pye's complaint to her supervisor about the offensive graffiti, and continuing throughout the remainder of Pye's employment, the supervisor, subjected Pye to adverse and disparate terms and conditions of employment on an almost daily basis, including but not limited to: assigning Pye who was an electrician on the project menial tasks, such as unscrewing light bulbs; assigning Pye to serve as a "Helper" to an Apprentice electrician; yelling at Pye on a regular basis; on one occasion, instructing Pye to walk up eight flights of stairs while the supervisor continually radioed her to go faster. Pye's supervisor also had a subordinate Apprentice electrician keep a time log of how long it took Pye to perform her job assignments. On one assignment, the supervisor told another employee who was assigned to a project with Pye, to ensure that Pye did all of the work on the project, implying that the other

employee did not have to do any of the work. The supervisor also constantly told Pye that there were "people waiting on the bench" for her job. The supervisor did not treat other employees in the same manner. These adverse and disparate terms and conditions of employment that Pye was subjected to were a direct result of her complaint about the sexually explicit graffiti that Pye reasonably believed created a sexually hostile work environment based on her sex, female.

11. On or about September 2, 2009, Pye was repeatedly asked by her supervisor if she wanted to be laid off. Each time Pye responded "no." On or about Friday, September 4, 2009, Pye was discharged, allegedly due to a reduction in force. At the time of her discharge, Pye was performing her job at a level acceptable to Defendant. Within one month of Pye's termination Defendant hired one or more employees to fill the same position that Pye held at the same location where Pye worked.

12. The effect of the practices complained of above has been to deprive Pye of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, female and in retaliation for engaging in protected activity under Title VII.

13. The unlawful employment practices complained of above were intentional.

14. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Pye.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment or from any other employment practice that discriminates on the basis

of sex, and from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Pye whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices described above, including but not limited to reinstatement or front pay.

D. Order Defendant to make Pye whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make Pye whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Pye punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 1st day of February, 2011.

                      Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

TRACY HUDSON SPICER
Supervisory Trial Attorney
Equal Employment Opportunity Commission
131 M Street, N.E.
Washington, D.C. 20507

LYNETTE A. BARNES
Regional Attorney
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, NC 28202

EDWARD O'FARRELL LOUGHLIN
Trial Attorney
Washington Field Office
131 M Street, N.E., Suite 4NW02F
Washington, DC 20507
edward.loughlin@eeoc.gov
Telephone:   (202) 419-0748
Facsimile     (202) 419-0739

**ATTORNEYS FOR PLAINTIFF**